IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KAY CASON, as Administratrix of the Estate of KECIA S. COLSTON, deceased, | } } } |
| Plaintiff, | } CIVIL ACTION NO. } 08-AR-1583-S } |
| v. | } } |
| PRINCETON BAPTIST MEDICAL CENTER, et al., | } } } |
| Defendants. | } |

**MEMORANDUM OPINION**

Before the court is the motion of plaintiff, Kay Cason, as administratrix, ("Cason"), to remand the above-entitled case to the Circuit Court of Jefferson County, Alabama, from which it was removed by defendants, Princeton Baptist Medical Center ("Princeton Baptist"), Baptist Health Systems, Leana Moncada, Alicia Edwards, and Jason Marcum (hereinafter collectively referred to as "defendants" or "removing defendants"). At the court's September 12, 2008, motion docket, the court heard argument on Cason's oral motion to remand which was thereafter reduced to writing. For the reasons set forth below, the court will grant plaintiff's motion.

**Relevant Procedural Facts**

This case arises out of the death of 38-year-old Kecia Colston ("Colston"). According to the complaint, Colston went to Princeton Baptist twice on January 10, 2006, complaining of numbness in her lower body and was released twice that same day. In the early

morning hours of January 11, 2006, Colston went to the emergency room at St. Vincent's Hospital and died shortly thereafter. On January 9, 2008, Kay Cason, as administratrix of Colston's estate, filed suit in the Circuit Court of Jefferson County, Alabama, alleging wrongful death and other state law torts. The complaint named as defendants not only the five removing defendants, but Southern Medical Group, Inc. ("Southern Medical"), Joseph Phan, M.D. ("Phan"), and Michelle Brewer ("Brewer").

On April 29, 2008, Cason sought leave of the state court to amend her complaint to add a claim under the Emergency Medical Treatment and Active Labor Act, (42 U.S.C. § 1395dd ("EMTALA")). Defendants contested the said motion. On May 4, 2008, after considerable debate, the state court wrote an opinion holding that it had concurrent jurisdiction over the federal statutory EMTALA claim and entered an order granting Cason leave to amend.

Not until July 30, 2008, did Cason actually file a paper bearing the title "amended complaint." The anticipated amendment named only Princeton Baptist as the defendant alleged to have violated the EMTALA. On August 29, 2008, five out of eight defendants filed the present notice of removal, invoking this court's removal jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. There was no reference in the notice of removal to 28 U.S.C. § 1367, the statute that provides a federal court supplemental jurisdiction over claims and parties that are

sufficiently connected to a federally cognizable claim.

Attached to the shuffled up removal papers filed within 30 days after July 30, 2008, was a disk containing numerous electronic files. There were and are several inconsistencies between the paper copies filed and the disk's electronic files. Some documents are in the paper file and not on the disk. The names of the electronic files on the disk were not in any cohesive order. "Sloppy" and "incomplete" would be proper terms to describe the notice of removal.

On September 2, 2008, after the time for removal had expired (using defendants' contention of July 30, 2008, as the starting date), defendants sent an email to the clerk, apparently trying to try to correct the disk's electronic file names in view of the fact that the disk was not user-friendly. Oddly, the email contained totally irrelevant state court documents, including court orders that were neither on the disk nor in the hard copies.

Culling through the papers contained in the notice of removal, there were no copies of a summons on any defendant, and what appeared to be seven motions not ruled on by the state court. After the September 2, 2008, email, there were ostensibly still seven pending motions (because the courtesy email is not a "filing"). However, this email did alert the court that at least four of the seven pending motions had, in fact, been ruled upon by the state

court.[1] In sum, there are pervasive inconsistencies, ambiguities, and absent documents in the notice of removal. The aforementioned are merely the highlights (or lowlights) of the removing defendants' shortcomings.

## Analysis

### A. Was the Removal Timely?

The threshold question is whether the notice of removal was timely under 28 U.S.C. § 1446(b). The sub-question is: "When did the 30-day removal clock start running?" It is undisputed that the action, as originally filed, was not removable. There was no diversity and no federal question. The earliest arguable notice of removability came on April 29, 2008, when plaintiff moved to amend her complaint to add the federal EMTALA claim. Section 1446(b), entitled "Procedure for Removal", provides, *inter alia*:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by defendant, through service or otherwise, of a copy of an **amended pleading**, **motion**, **order**, or other paper from which it may first be ascertained that the case is one which is or has become

---

[1] The seven motions are as follows:
1. Motion for a Qualified Protective Order Pursuant to 45 C.F.R. § 164.512 by Princeton Baptist Medical Center and Baptist Health System (3/26/2008)
2. Southern Medical Group, Inc.'s Motion for Definite Statement (2/26/2008)
3. Southern Medical Group, Inc.'s First Motion to Dismiss   (2/26/2008)
4. Southern Medical Group, Inc.'s  Motion to Quash Attempted Service (2/26/2008)
5. Joseph Phan, M.D.'s, Motion to Quash Attempted Service   (2/26/2008)
6. Plaintiff's Motion to Compel Princeton Medical Center, Leana Moncada, Jason Marcum, and Alicia K. Edwards to Answer Interrogatories and Respond to Requests for Production of Documents (4/23/2008)
7. Plaintiff's Motion for Leave of Court to Amend Complaint (4/29/2008)

The court still does not know whether or not there has been any ruling on above numbered motions 1, 3, and 4.

   removable . . .

(emphasis supplied).

   Cason says that under the undisputed procedural circumstances of this case, the triggering event for the 30-day removal period was the filing of her **motion** to amend. Alternatively, she argues that the state court's **order** granting her motion for leave to amend started the clock. Using either event, the first of which occurred on April 29, 2008, and the second of which occurred on May 4, 2008, the removal on August 29, 2008, came too late. Defendants necessarily contend that the triggering event occurred on July 30, 2008, when Cason **actually filed her amended complaint**.

   It should go without saying that statutes governing removal must be strictly construed, and that any doubts must be resolved against federal jurisdiction. The well understood reason behind this proposition is that federal courts are courts of limited jurisdiction. *Meidema v. Maytag Corp.*, 450 F.3d 1322 (11th Cir. 2006); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092 (11th Cir. 1994).

   Under procedural circumstances like these, three views have been expressed as to when the clock begins to run under § 1446(b). A district court within the Eleventh Circuit has persuasively held that the clock begins to run when the **motion** for leave to amend is filed. *See Pease v. Medtronic, Inc.*, 6 F. Supp. 2d 1354, 1357 (S.D. Fla. 1998). The Seventh Circuit has held that the clock starts ticking when the state court **grants** a motion to amend. *See Sullivan*

*v. Conway*, 157 F.3d 1092, 1094 (7th Cir. 1998). The Fifth Circuit has held that the clock does not begin to run until the **amended complaint itself is filed**. *See Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). There has been no expression on the subject from the Eleventh Circuit.

Only the view of the Fifth Circuit would make this removal timely. This court respectfully disagrees with the Fifth Circuit because this court is compelled to apply the rule of strict construction against removability. Section 1446(b) expressly recognizes "**motion**" and "**order**", as well as "**amended pleading**", as alternative items, which, if received by a defendant, provide sufficient notice of removability to start the clock. Fortunately, for this court, it does not have to chose between "motion" and "order" as triggering events, because both Cason's **motion** and the state court's carefully crafted **order** both warned defendants that Cason was pursuing a federal claim.

If the Fifth Circuit's reasoning were taken to its logical conclusion, a case would not be removable until a paper entitled "amendment" is filed, (1) even though the proposed amendment adding a federal claim had been attached as an exhibit to the motion for leave to amend; (2) even though the defendant named in the proposed federal claim strenuously objected to the amendment; and (3) even though extensive discovery had taken place bearing on the federal claim before the amendment itself was filed. Such an interpretation

and application of § 1446(b) would allow a defendant to wear blinders against the clear import of the statute.

### B. Failure of All Defendants to Join or Consent to the Removal

Realizing that this court is not the final authority on the meaning of § 1446(b), the court turns to Cason's second argument, in which she points out that all defendants did not join in or consent to the removal. They still have not joined or consented, except orally and vicariously more than 30 days after July 30, 2008, the date defendants say started the 30-day clock.

Although not expressly stated in 28 U.S.C. § 1446(b), the statute has been universally construed to require that **all** defendants join in, or consent to, the removal within the 30-day period of removability. "The unanimity requirement mandates that in cases involving multiple defendants, all defendants must consent to removal". *Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1044 (11th Cir. 2001). This means that "each defendant must join in the removal by signing the notice of removal or by explicitly stating for itself its consent on the record, either orally or in writing, within the 30-day period prescribed in 28 U.S.C. § 1446(b)". *Deibel v. S.B. Trucking Co.*, 262 F. Supp. 2d 1319, 1328 (M.D. Fla. 2003). An oral expression by the removing defendant's counsel is insufficient. *Miles v. Kilgore*, 928 F. Supp. 1071 (N.D. Ala. 1996).

Here, not only did defendants Phan, Brewer, and Southern

Medical[2] not join in or consent to the removal, but the removing defendants made no attempt in the notice of removal to explain the non-joinder of their fellow defendants.

Removing defendants claim that the "separate and independent claim" exception of 28 U.S.C. § 1441(c) applies here, and that unanimity was not required, citing *Bernstein v. Lind-Wadlock & Co.*, 738 F.2d 179 (7th Cir. 1984). It is true that Cason only attempts to state a claim against one defendant, Princeton Baptist, for the alleged EMTALA violation. Defendants argue that they had the right to remove because the newly added EMTALA claim provided a separate and independent ground for removal. Cason responds, *inter alia*, with the argument that the EMTALA claim is not, in fact, a separate and independent ground recognized by § 1441(c), because it fails the test enunciated by the Supreme Court in the seminal case, *Am. Fire & Cas. Ins. Co. V. Finn*, 341 U.S. 6 (1951). In *Finn*, the Court set the standard for finding a separate and independent claim, holding that "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." *Id.* Here, there is a single wrong

---

[2]Southern Medical may or may not be a real defendant. On April 11, 2008, the state court granted Southern Medical's motion to dismiss, without prejudice. Taking this on face value, it stands to reason that Southern Medical should not have been named as a defendant in the first amended complaint filed on July 30, 2008. However, Southern Medical remains on the named defendants' list in the July 30, 2008, amended complaint. This could mean that Cason thought she had discovered a way around the dismissal of April 11, 2008. It is an unexplained enigma.

8

allegedly caused by state law torts committed by all defendants, coupled with one entangled federal claim against one defendant. The added EMTALA claim is one over which the state court has concurrent jurisdiction. There is no claim of complete preemption. This new claim does not qualify as a separate and independent claim under § 1441(c).

If this court is incorrect in its reading of § 1441(c), and the removing defendants have a foot in the door of this court because the EMTALA claim is separate and independent, this court would nevertheless "remand all matters in which State law predominates" pursuant to § 1441(c), sending back to the state court everything and everybody except the EMTALA claim against Princeton Baptist.

### C. Fatal Procedural Defects

In *Kisor v. Collins*, 338 F. Supp. 2d 1279 (N.D. Ala. 2204), this court treated the unequivocal requirement of 28 U.S.C. § 1446(a), that the notice of removal contain copies of all "process, pleadings and orders". In the notice of removal filed here by the removing defendants, no **process** was included, and many state court **orders** were left out. These procedural defects were fatal.

### Conclusion

For the foregoing separate and several reasons, Cason's motion to remand will be granted by separate order.

DONE this 29th day of September, 2008.

                                                                   _____
                                                                   WILLIAM M. ACKER, JR.
                                                                   UNITED STATES DISTRICT JUDGE